TERRELL, Justice
(dissenting).
The statement of fact in the majority opinion is accurate. A referee was appointed to take testimony and make recommendations in the cause. Relying on State ex rel. Florida Bar v. Ruskin, Fla.1961, 126 So.2d 142, the referee recommended that respondent be suspended from the practice of law for a period of one year. The Board of Governors of The Florida Bar approved the findings of fact of the referee but disbarred respondent and directed that he pay the costs of this proceeding in the sum of $307.10.
I would affirm the judgment of the Board of Governors. “On six different occasions,” said the majority opinion, respondent appropriated money placed in his hands as attorney by six different clients ta his personal use. These defalcations took place within approximately one year despite the fact that respondent had specific instructions from each client to use the sums entrusted to him for a named purpose. I do not overlook the fact that respondent repaid a large portion of these funds but the record shows that a considerable portion of said moneys is outstanding and unpaid. The fact of partial restitution may do much to appease the clients whose funds were restored but it does not appease those whose funds were not restored, neither does it erase the cause for which charges were preferred against him.
In my book when a lawyer deliberately Violates instruction from his client and contrary to law, appropriates moneys of clients to his own use in the manner shown, his reservoir of integrity has run dry. Integrity is the priceless ingredient of every lawyer; his fidelity is sustained by it; it is fortified by those virtues we like to think of as moral soundness, stability, honesty, dependability; in fine, the very qualities that his brethren found in him which won him admission to the bar. I think respondent is shown to be destitute of pride in his profession and that his ethical concepts are blanked both of which seem to be among the indicia of a dependable lawyer. No lawyer can afford to guide his conduct by any other light and when he attempts to do so, he not only betrays the confidence his brethren placed in him, he forfeits the right to company and membership in the profession.
It matters not for what purpose a client places money in his lawyer’s hands; it is bad business and the worst kind of practice to credit it to his personal account. It is trust funds and should never be commingled with personal funds. It enlarges the danger of misappropriation and when *4 appropriated to personal use by paying personal bills, extending or cooking up personal ventures, or directing it in channels other than instructed by his client, there can be no more flagrant abuse of trust; it is the most heinous species of embezzlement; it is an application deluxe of the pickpocket’s trade and to come up with domestic trouble as an excuse for doing so is as empty and devoid of reason as Adam’s excuse for eating the apple.
For the reasons so recited, I think respondent was shown to be guided by a pattern of professional conduct far below that which every lawyer should impose on himself. Such a pattern too often begets sticky fingers and a host of other mis-prisions. By the nature of his employment the lawyer is trustee for every client who employs him. When he views his trusteeship other than as a sacred trust or in anywise abuses it, he not only smuts the good character his brethren vouched for him, he forfeits their confidence and respect.
Every lawyer, by the nature of the oath he takes and code of ethics he vows to live by, is clothed with an obligation to the public, to his profession, to his client and to his brethren. On the record respondent is shown to have flagrantly violated each of these obligations. The Board of Governors, who are clothed with a great responsibility in this, found him guilty and disbarred him. A “great and honorable profession” cannot be sustained with such members. We would never reverse a chancellor or jury or a deputy commissioner in a workman’s compensation case on the record before the Board of Governors. True, the forum of the Board of Governors is rectitude of professional conduct but a scar made on the social cosmos by a breach of professional conduct may be just as ugly and often more far reaching in consequences than one made by violations of the criminal law or one in which a chancellor is driven to compel a defendant to do equity.
I would affirm the order and judgment of the Board of Governors.
I, therefore, dissent.